IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREW T. ROMERO,

      Plaintiff,

v.                                                                                              CV 18-0579 JHR

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

      Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Andrew T. Romero's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 16], filed November 13, 2018. Having studied the parties' briefing and the relevant portions of the Administrative Record ("*AR*"),[1] the Court **grants** Mr. Romero's Motion, for the reasons set forth below.

### I.     INTRODUCTION

Mr. Romero's argument for reversal of the administrative law judge's ("ALJ") decision in this case is a narrow one. Having found him to be disabled, Mr. Romero argues that, under the pertinent Social Security Ruling ("SSR")[2] and case law, the ALJ was required to consult with a medical advisor to infer his disability onset date. [*See generally* Doc. 16]. The Commissioner disagrees, arguing that the ALJ reasonably determined Mr. Romero's onset date in the absence of a medical advisor. [*See generally* Doc. 18]. Having studied the pertinent law and the ALJ's

---

[1] Documents 11 through 11-20 comprise the sealed Administrative Record. The Court cites to the Record's internal pagination, rather than the CM/ECF Document and page number.

[2] SSR 83-20, the controlling Ruling in this case, was rescinded by the Administration in October, 2018. *See* SSR 18-01P, 2018 WL 4945639; SSR 18-02P, 2018 WL 4945640. However, as the Commissioner concedes, "SSR 83-20 was still applicable at the time of the ALJ's decision, as the new SSRs only applied to new disability applications. *See* 2018 WL 4945639, at \*7; 2018 WL 4945640, at \*5." [Doc. 19, p. 4]. The Court, accordingly, applies SSR 83-20 to this case.

rationale for selecting the onset date that he did, the Court finds Mr. Romero to have the better argument.

The ALJ based his finding of disability on the date of a consultative examination conducted by Eligio R. Padilla, Ph.D. Dr. Padilla determined that Mr. Romero's symptoms were disabling despite mental health treatment he was receiving. Mr. Romero argues, and the Court finds, that the ALJ's use of the date Mr. Romero was examined by Dr. Padilla as the date he became disabled is not supported by substantial evidence. Rather, where, as here, there was evidence of a potentially disabling condition prior to the date of the consultative examination, Mr. Romero's onset date was ambiguous. This being the case, the ALJ was obligated to employ the services of a medical advisor to determine Mr. Romero's onset date. Because he failed to do so, the ALJ's decision must be reversed and remanded for further proceedings.

## II.    BACKGROUND

Mr. Romero filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on July 2, 2009. *AR* at 121-130. He initially alleged a disability onset date of February 1, 2007, due to back and leg injuries and psychological problems. *AR* at 144, 167. The Administration denied Mr. Romero's claims initially and upon reconsideration, and he requested a *de novo* hearing before an ALJ. *AR* at 66-88.

ALJ Barry O'Melinn held a hearing at which Mr. Romero and a vocational expert testified on November 15, 2011. *AR* at 24-65. ALJ O'Melinn issued a decision denying Mr. Romero's claims on March 13, 2012. *See AR* at 10-19. The Appeals Council declined to review ALJ O'Melinn's decision, and it accordingly became the final decision of the Commissioner. *AR* at 1-5. Mr. Romero then filed a lawsuit challenging the Commissioner's decision in this Court, resulting in a remand on September 8, 2014. *AR* at 380-387.

While his first civil action was pending, Mr. Romero filed a subsequent claim for Title XVI benefits on May 1, 2013. *AR* at 500-508. This application was also denied at the initial and reconsideration levels. *AR* at 365-366. However, on October 23, 2014, the Appeals Council issued an order consolidating the claim files and vacating the final decision of the Commissioner on the basis of the September 8, 2014 remand Order. *AR* at 388-392.

ALJ O'Melinn held a second hearing on August 26, 2015. *AR* at 316-347. After this hearing, ALJ O'Melinn denied Mr. Romero's claim on October 19, 2015. *AR* at 286-315. Mr. Romero then filed a second civil action seeking the reversal of the ALJ's decision and, on March 10, 2017, this Court issued an Order remanding Mr. Romero's case to the Administration for further proceedings. *AR* at 1209-1225. While this action was pending Mr. Romero filed a third application for Title XVI benefits on February 3, 2016. As the case was previously remanded to ALJ O'Melinn, the Appeal Council remanded the case to a different ALJ on April 24, 2017. *AR* at 1206-1207.

A third hearing on Mr. Romero's consolidated claims was held on November 28, 2017, before ALJ Eric Weiss ("the ALJ"). *AR* at 1057-1091. At this hearing Mr. Romero amended his alleged onset date to November 5, 2010. *AR* at 1060-1061. The ALJ issued a partially favorable decision on February 23, 2018, finding Mr. Romero to be disabled as of June 20, 2016, but not before that date. *See AR* at 1014-1056. Pertinent here, the ALJ determined that Mr. Romero was "not under a disability within the meaning of the Social Security Act at any time through June 30, 2011, the date last insured." *AR* at 1019. The Appeals Council did not assume jurisdiction over the case, and so ALJ Weiss' decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.984(d), 416.1484(d). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

3

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[3]

At Step One of the sequential evaluation process, the ALJ found that Mr. Romero has not engaged in substantial gainful activity since his amended alleged onset date, November 5, 2010. *AR* at 1021. At Step Two, he determined that Mr. Romero has had the following severe impairments since his alleged onset date: "chronic obstructive pulmonary disease; lumbar osteoarthritis with radiculopathy; right hip degenerative joint disease; left foot 1st toe joint osteoarthritis; bilateral acromioclavicular joint arthritis; major depressive disorder; and personality disorder." *AR* at 1021. At Step Three, the ALJ concluded that Mr. Romero's impairments do not meet or medically equal the regulatory "listings." *AR* at 17-18. Mr. Romero does not challenge these findings on appeal.

When a claimant does not meet a listed impairment, the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is not the *least* an

---

[3] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that prior to June 20, 2016, Mr. Romero retained the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he was able to lift 20 pounds occasionally and lift and carry 10 pounds frequently and push and pull the same. He was able to walk and stand for 6 hours per 8 hour workday and sit for 6 hours per 8 hour workday with normally scheduled breaks. He was able to occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds. He was able to occasionally balance, stoop, crouch, kneel and crawl. He was able to reach frequently. He had to avoid more than occasional exposure to protected heights and pulmonary irritants such as dust, fumes, odors and gases. He was able to understand, remember and carry out simple instructions and make commensurate work related decisions in a work setting with few, if any, changes and not at an assembly line rate pace. He was able to interact occasionally with supervisors, co-workers, and the public. He was able to maintain concentration, persistence and pace for two hours at a time during the workday with normally scheduled breaks.

*AR* at 1025. However, after June 20, 2016, the ALJ found that Mr. Romero's RFC would be further limited, resulting in a finding of disability. *AR* at 1042-1043. Specifically, the ALJ determined that, as of June 20, 2016, "due to physical and mental impairments, he will be off task more than one hour each workday in addition to normally scheduled breaks, and will be absent from the workplace 2 days each month." *AR* at 1039. Relying on his RFC findings at Steps Four and Five, the ALJ determined that there were jobs that Mr. Romero could have performed prior to June 20, 2016, but that, as of that date, there were no jobs that exist in the national economy that Mr. Romero can perform. *See AR* at 1042-1043. Accordingly, the ALJ found that Mr. Romero was not disabled prior to June 20, 2016, but became disabled on that date. *AR* at 1043. As such, the ALJ found that Mr. Romero failed to demonstrate a disability for the purposes of his Title II claim, having failed to establish disability prior to his date last insured, but was disabled as of June 20, 2016, for the purposes of his Title XVI claim. *AR* at 1044.

## III. LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "[T]he agency's 'failure to apply the correct legal standards, or to show us that it has done so' is 'grounds for reversal.'" *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 640 (10th Cir. 2018) (unpublished) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The parties agree that SSR 83-20 controls in this case. SSRs are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). SSR 83-20 discusses how the Administration assess the "onset date of disability under the provisions of Titles II and XVI of the Social Security Act (the Act) and implementing regulations." SSR 83-20, 1983 WL 31249, at *1. As stated therein, "[t]he onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20, 1983 WL 31249, at *1. "In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits." SSR 83-20, 1983 WL 31249, at *1.

The SSR distinguishes between onset dates in disabilities with traumatic origin, and those with nontraumatic origin, SSR 83-20, 1983 WL 31249, at *1, and the parties agree that it is the latter that applies to Mr. Romero's mental impairments in this case. As stated in the SSR:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical

records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomology of the disease process.

SSR 83-20, 1983 WL 31249, at *2. "[T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." SSR 83-20, 1983 WL 31249, at *3. "How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when the onset must be inferred." SSR 83-20, 1983 WL 31249, at *3. "The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected." SSR 83-20, 1983 WL 31249, at *3.

The parties also agree that the controlling Tenth Circuit case is *Blea v. Barnhart*, 466 F.3d 903 (10th Cir. 2006). There, the Tenth Circuit examined the requirements of SSR 83-20, and concluded that it had not been met. *See id.* at 909. Of note, the court recognized that "[m]edical evidence … is the 'primary element' for the onset determination, as the onset date 'can never be inconsistent with the medical evidence of record.'" *Id.* (quoting SSR 83-20 at 2-3). The court also quoted the Eighth Circuit for the following proposition:

> It is important to understand that the issue of whether a medical advisor is required under SSR 93-20 does not turn on whether the ALJ could reasonably have determined that the claimant was not disabled before her last insured date. Rather, when there is no contemporaneous medical documentation, we ask whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status. If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure (sic) that the determination of onset is based upon a "legitimate medical basis."

7

*Id.* at 911 (quoting *Grebenick v. Chater*, 121 F.3d 1193, 1200-1201 (8th Cir. 1997)). In other words, "where 'medical evidence of onset is ambiguous,' an ALJ is obligated to call upon the services of a medical advisor." *Id.* (quoting *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995)). "The requirement that, in all but the most plain cases, a medical advisor be consulted prior to inferring an onset date is merely a variation on the most pervasive theme in administrative law – that substantial evidence support an agency's decisions." *Id.* at 913 (citation omitted). "Thus, the issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence concerning the onset of [the claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions." *Id.* at 912. If the medical evidence is not ambiguous regarding the onset date of the claimant's disability, then the ALJ is not required to call a medical advisor. *See, e.g.*, *Bigpond v. Astrue*, 280 F. App'x 716, 719 (10th Cir. 2008) (unpublished).

IV.   ANALYSIS

Mr. Romero argues that "SSR 83-20 is relevant in this case in regards to Mr. Romero's mental impairments stemming from sexual abuse experienced in childhood which have progressed over time." [Doc. 16, p. 18]. In other words, Mr. Romero argues that his alleged onset date is ambiguous and that the ALJ was required to call a medical advisor to infer his onset date. The Commissioner disagrees, arguing that the ALJ "reasonably determined that Plaintiff became disabled on June 20, 2016." [Doc. 18, p. 4]. For the reasons that follow, the Court finds that Mr. Romero has the more persuasive argument in this case.

"The question before this Court is whether the medical evidence regarding Plaintiff's impairments, and the time at which they became disabling, is ambiguous." *Quezada v. Colvin*, CV 15-0282 LAM, 2016 WL 10179362, at *8 (D.N.M. 2016). The Court reiterates that, under SSR

83-20, the ALJ's rationale for the date selected must be "convincing." SSR 83-20, 1983 WL 31249, at *3. Here, the ALJ primarily[4] relied on first of two consultative examinations performed by Eligio R. Padilla, Ph.D., which took place on the onset date the ALJ selected, June 20, 2016. *See AR* at 1039-1041, 1465. In determining that Mr. Romero became disabled as of June 20, 2016, the ALJ reasoned:

> On June 20, 2016, the claimant underwent a DDS consultative psychological evaluation by Eligio R. Padilla, Ph.D. (Exhibit 29F). Dr. Padilla reviewed the claimant's medical records and interviewed the claimant. Dr. Padilla recorded the claimant's history, which included placement in special education classes after he was held back in first grade, due to being a "slow learner," and dropping out of high school in the 11th grade (Exhibit 29F/2). The claimant reported he went to work in his father's radiator shop and salvage yard. Cleaning and repairing radiators was his primary means of supporting himself. He did similar work in Tucson, Phoenix, Las Vegas, and Grand Junction, Colorado. He told Dr. Padilla he had trouble maintaining employment because of his irritability, angry outbursts, and substance abuse, and had been homeless a good portion of his adult life. In recent years, chronic back pain had dashed hope of finding employment fixing radiators or as a manual laborer. The claimant told Dr. Padilla he was in a serious car accident when he was 18 years of age, resulting in a coma lasting a couple of days and in injuries to his back and legs that had progressed and caused chronic pain. With regard to mental health treatment, the claimant told Dr. Padilla he continued in counseling for PTSD and depression, and was currently taking Sertraline for depression and Seroquel to reduce his agitation (Exhibit 29F/3). He had trouble falling asleep, but usually got about 8 hours of sleep (Exhibit 29F/4). On mental status examination, Dr. Padilla administered the Mini-Mental Status Exam, on which the claimant obtained a raw score of 25/30, consistent with mild cognitive impairment (Exhibit 29F/3). Dr. Padilla also administered the WA.IS-IV, on which the claimant obtained a Full Scale IQ score of 66, in the extremely low range of intellectual functioning (Exhibit 29F/4). His Verbal Comprehension score was 72 and Perceptual Reasoning was 75, in the borderline range of functioning.
>
> Based on his review of medical evidence, interview with the claimant, and testing, Dr. Padilla diagnosed major depressive disorder, recurrent, severe without psychotic features, and mild mental retardation (provisional) (Exhibit 29F/7). He assessed a Global Assessment of Functioning of 45. Dr. Padilla discussed the Full

---

[4] The Commissioner correctly points out that the ALJ also relied on the fact that "Plaintiff's insomnia and pulmonary issues also appeared to worsen," after June 20, 2016. [*See* Doc. 18, pp. 6-7]; *AR* at 1041. However, as Mr. Romero points out, there are records predating June 20, 2016, which indicate these same problems. [*See* Doc. 19, p. 4]. Moreover, when the ALJ's decision is examined as a whole it is clear that he relied only on Dr. Padilla's first consultative examination to establish Mr. Romero's onset date, as the date of that evaluation was June 20, 2016. *See AR* at 1465. Accordingly, the Court focuses its analysis on Dr. Padilla's report.

Scale IQ score of 66, and the provisional diagnosis of mild mental retardation (now referred to as intellectual disorder in the regulations). Dr. Padilla noted the claimant was functioning cognitively at an extremely low level. Both the American Association on Intellectual and Developmental Disabilities and the Diagnostic and Statistical Manual of the American Psychiatric Association required that three criteria be met for the diagnosis of mental retardation. The claimant met the first criterion - an extremely low Full Scale IQ score. The second requirement was an extremely low score on a standardized measure of adaptive behavior. Such an instrument was not administered as part of this evaluation and referral documents did not address this issue. The third requirement was that the diagnosis should be made prior to the age of eighteen to rule out dementia. The claimant reported being held back in the first grade and being placed in special education, but he also was reportedly involved in a series of car accidents, the most serious occurring when he was 18-years-old that resulted in a coma lasting a day or two. He said he could manage all activities of daily living, but his work history and episodes of homelessness and dependency on his sisters suggested otherwise .... Dr. Padilla concluded the diagnosis of mild mental retardation technically must be considered provisional. Dementia due to head injury had not been ruled out.

With regard to work related functional limitations, Dr. Padilla indicated the claimant had mild limitation of his ability to understand and remember very short and simple instructions, but marked limitation in understanding and remembering detailed and complex instructions (Exhibit 29F/7). As to his ability to sustain concentration and task persistence, he had marked limitation of his abilities to carry out instructions, to attend and concentrate, and to work without supervision. With regard to social interactions, he had marked limitation with the public, coworkers, and supervisors. As to adaptation, he had marked limitation of his ability to adapt to changes in the workplace. He had mild limitation of his ability to be aware of normal hazards. He had mild limitation of his abilities to use public transportation and travel to unfamiliar places.

The claimant's attorney referred him to Dr. Padilla for a second psychological evaluation on October 30, 2017 (Exhibit 38F). Dr. Padilla again reviewed the claimant's medical records and interviewed the claimant. The claimant was prescribed Sertraline at night for symptoms of depression and anxiety, Hydroxyzine for symptoms of anxiety, and Seroquel to reduce his agitation and to help him sleep. His primary ways of coping with stress were social withdrawal and isolation and smoking cannabis. Dr. Padilla noted when he saw the claimant in 2016, he was getting about eight hours of sleep on medication, but was now only sleeping about five hours at night on the average, even on a major tranquilizer. On mental status examination, the claimant was administered the Mini-Mental Status Exam, on which he obtained a raw score of 23/30, consistent with mild cognitive impairment (Exhibit 38F/6).

Dr. Padilla diagnosed major depressive disorder, recurrent, severe without psychotic features; mild mental retardation (provisional); and personality disorder

> not otherwise specified (Exhibit 38F/8). He rated a Global Assessment of Functioning of 45. Dr. Padilla discussed his findings on his prior evaluation of the claimant. Dr. Padilla again stated it was unclear whether his condition was mental retardation or dementia caused by his reported head injuries and many years of polysubstance abuse and methamphetamine dependence. Dr. Padilla stated that based on his review of the medical records and two consultative evaluations, he felt the claimant had a personality disorder going back at least to adolescence. The claimant exhibited traits associated with antisocial, paranoid, and borderline personality disorders.
>
> With regard to work related mental functional limitations, Dr. Padilla completed a medical source statement form dated November 14, 2017, on which he indicated marked limitations in many areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation (Exhibit 37F/2). Dr. Padilla also completed a form indicating the claimant met the requirements of listing 12.04 for affective disorders.
>
> As discussed above, I accord limited weight to Dr. Padilla's opinion. I do not accept all of the marked limitations of mental functioning, or the finding of listing level severity. Nevertheless, there is evidence to show that the claimant's physical and mental impairments have worsened beginning June 20, 2016. Dr. Padilla reported Mini-Mental Status Exam score of 25 out of 30 in June 2016, decreasing slightly to 23 out of 30 in October 2017 (Exhibit 29F/3 and 38F/6). After his June 2016 evaluation, Dr. Padilla indicated mild limitation of ability to understand and remember very short and simple instructions, but in October 2017, he indicated moderate limitation in this area (Exhibits 29F/7 and 37F/2).

*AR* at 1039-1042.

The Commissioner argues that the ALJ's conclusion that Mr. Romero became disabled on June 20, 2016, was reasonable, and that a medical advisor was not required under SSR 83-20. [*See* Doc. 18, p. 6]. In support of her argument, the Commissioner relies on the Tenth Circuit's reasoning in *Bigpond*, where there were contemporaneous medical records documenting the severity of the claimant's condition both before and after her date last insured. [*See* Doc. 18, p. 6]; *Bigpond*, 280 F. App'x at 718-719. The Court is not convinced.

Dr. Padilla described his impressions of Mr. Romero's then-present complaints and diagnoses in relevant part:

11

> he was forthcoming regarding his polysubstance abuse and was able to describe symptoms consistent with the diagnoses of PTSD and agitated form of depression that are now being addressed at Valle del Sol counseling. Given his extremely low level of cognitive functioning, his reportedly very low academic skills, his PTSD and depression, his sketchy employment history and history of homelessness, his history of polysubstance abuse and dependence, his dependency on his sisters and his limited personal familial and social resources, his prognosis is guarded, at best, and is more likely poor, despite the support of his sisters and the professionals at Valle del Sol.

*AR* at 1471. In sum, Dr. Padilla's opinion as of June 20, 2016, was that Mr. Romero's mental health prognosis was poor, despite the mental health treatment he was receiving and the support of his family.

As Mr. Romero argues, the ALJ's reasons for relying on Dr. Padilla's evaluation date

> makes it difficult to understand how ALJ Weiss determined that Mr. Romero was able to maintain concentration, persistence, and pace for two hours at a time during the workday with normal scheduled breaks on the day <u>before</u> he was evaluated by Dr. Padilla in June 2016, but the following day his mental and physical impairments became so severe as to

render him disabled. [Doc. 16, pp. 19-20]. This is especially true where, as here, there is evidence of the same impairments that Dr. Padilla diagnosed predating his evaluation in the record. *See, e.g. AR* at 269-285 (November 30, 2011, diagnoses of PTSD and Major Depressive Disorder), 641-645, 743-771, 775-795 (June 26, 2013, diagnoses of Mood Disorder NOS and PTSD), 951-974. In fact, there is evidence that Mr. Romero may have been suffering from these same impairments prior to his date last insured, as he presented to the University of New Mexico Hospital Emergency Room complaining of suicidal and homicidal ideation after relapsing on meth on November 4, 2010. *See AR* at 244. In other words, the Court finds that the evidence concerning Mr. Romero's mental impairments was ambiguous in this case, and that the ALJ erred in arbitrarily choosing the date of Dr. Padilla's examination as Mr. Romero's onset date when it could reasonably have been sooner.

While it is not binding, the Court finds the Fifth Circuit's rationale in *Spellman v. Shalala*, 1 F.3d 357 (5th Cir. 1993), to be particularly persuasive here, for two reasons. First, the Fifth Circuit applied the same standard that the Tenth articulated in *Blea*:

> Because a correct determination of the onset date of a disability is critical, *see* SSR 83-20, we agree with the Sixth and Ninth Circuits' interpretation of SSR 83-20. We therefore hold that in cases involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability is ambiguous and the Secretary must infer the onset date, SSR 83-20 requires that the inference be based on an informed judgment. The Secretary cannot make such an inference without the assistance of a medical advisor.

*Id.* at 362-363. Second, the facts of *Spellman* are analogous to this case. There, as here, "[i]n determining the onset date of Spellman's disability, the Appeals Council found that the first evidence of a significant mental impairment was in April 1986, when Spellman had her first consultative mental status evaluation." *Id.* at 361. The Appeals Council then arbitrarily tacked on six months prior to the April examination and set the claimant's onset date. *Id.* The court found this to be in error, reasoning that "[t]he medical evidence with regard to the onset date of Spellman's disability is ambiguous, because it is unclear when Spellman's mental impairment first restricted her functional capacity." *Id.* at 363. The court accordingly concluded that the Appeals Council's determination of the claimant's onset date was not based on a "legitimate medical basis" and, therefore, that "the Appeals Council could not have inferred an onset date based on an informed judgment of the facts without consulting a medical advisor." So too here.

Here, as in *Spellman*, the Administration based Mr. Romero's onset date on the date of his first consultative examination – June 20, 2016. However, there is evidence that Mr. Romero has been treated for his depression and PTSD since at least November, 2011. Moreover there is evidence that Mr. Romero's impairments may have been disabling since November, 2010, which is before his date last insured. In these circumstances, the Court cannot agree with the

Administration that Mr. Romero's onset date was not ambiguous. That being the case, the ALJ was required to consult a medical advisor under the provisions of SSR 83-20.

V.  **CONCLUSION**

In cases where the medical evidence is ambiguous, the Commissioner must infer a disability onset date based upon an informed judgment. Under SSR 83-20 and *Blea*, an ALJ must call on the services of a medical advisor in order to fulfil this obligation. The ALJ ignored this requirement in this case. As such, the Court has not choice but to remand Mr. Romero's claim again for further administrative proceedings.

Wherefore, IT IS THEREFORE ORDERED that Andrew T. Romero's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 16] is **GRANTED** and the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this decision.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent